**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

631 NORTH BROAD STREET, LP,     :
     :
          Plaintiff,  :    CIVIL ACTION
     :
   v.     :    NO. 17-02805
     :
COMMONWEALTH LAND TITLE     :
INSURANCE COMPANY,     :
     :
          Defendant.  :

<u>**MEMORANDUM**</u>

Before the Court are Defendant's Motion for Summary Judgment (Doc. No. 10), Plaintiff's Response in Opposition thereto and its own Cross-Motion for Summary Judgment (Doc. No. 13), and Defendant's Reply (Doc. No. 12). For the reasons set forth below, we grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

This case arises from 631 North Broad Street, LP's ("631 LP") title insurance policy with Commonwealth Land Title Insurance Company ("Commonwealth"). At the heart of 631 LP's Complaint is its allegation that Commonwealth breached the policy when it refused to pay for 631 LP's litigation expenses in a dispute with the owner of a neighboring property. Commonwealth has moved for summary judgment on the grounds that the underlying litigation did not trigger its duty to defend, and that even if such an obligation was triggered, the policy's survey exception excused its obligation.

1

This Motion is fully briefed and ripe for the Court's adjudication. The Court has considered the parties' submissions and decides this matter without oral argument. Fed. R. Civ. P. 78; Loc. R. Civ. P. 7.1(f).

## I. FACTUAL BACKGROUND

On November 6, 2015, 631 LP purchased a parcel of real property located at 631 North Broad Street, Philadelphia, Pennsylvania (the "631 Property"). 631 LP received the 631 Property by deed, which was recorded with the City of Philadelphia Commissioner of Records on November 10, 2015. (631 LP Ex. C; Commonwealth Ex. 3-A). In relation to its purchase of the 631 Property, 631 LP obtained a title insurance policy (the "Policy") from Commonwealth. (631 LP Ex. A; Commonwealth Ex. 1-A).

Under the Policy, Commonwealth became obligated to "provide for the defense of [631 LP] in litigation in which any third party asserts a claim covered by [the Policy]." (631 LP Ex. A; Commonwealth Ex. 1-A, at 6). The Policy's coverage extended to the boarders of the 631 Property, as described in Schedule A of the Policy. (631 LP Ex. A). The land described in Schedule A matches the language of the property's deed.[1] __Id.__ The Policy further

---

[1]     The deed and Schedule A of the Policy use the same description for the 631 Property:

> ALL THAT CERTAIN lot or piece of ground and all of the improvements thereon erected.
> SITUATE on the Easterly side of Broad Street at the distance of 150 feet Southwardly from the Southeasterly corner of Broad Street and Wallace Street in the 88th (formerly the 14th) Ward of City of Philadelphia.
> CONTAINING in front or breadth on the said Easterly side of

established 631 LP's coverage by noting that the Policy's coverage "does not include any property beyond the lines of the area described in Schedule A." Id. Lastly, the Policy explicitly stated that Commonwealth's "obligation is limited to only those stated causes of action alleging matters insured against by this policy[,] not [] causes of action that allege matters not insured against by this policy." Id.

The Policy also included a common survey exception. (631 LP Ex. A, Schedule B). Through the survey exception, Commonwealth would be excused from paying 631 LP's costs, attorneys' fees, or expenses which arose by reason of "[e]asements, encroachments, overlaps, shortages of area, boundary line disputes and other matters affecting title that an accurate and complete survey would disclose." (631 LP Ex. A; Commonwealth Ex. 1-A).

The parties do not dispute that 631 LP did not have a survey performed prior to purchasing the 631 Property. (Def.'s Br. in Supp. of Mot. for Summ. J. at 7; Pl.'s Br. in Opp. to Mot. for Summ. J. at 13). The parties also do not dispute that a wall located on the southern boarder of the 631 Property (the "South Wall") extends approximately five inches onto a neighboring parcel located at 619 North Broad Street, Philadelphia, Pennsylvania (the "619 Property").

_____

Broad Street 77 feet 3.25 inches and extending of that width in length or depth Eastwardly on lines at right angles to the said Broad Street 130 feet to Watts Street.

The 619 Property is owned by Congregation Rodeph Shalom ("CRS"). (631 LP Ex. H; Commonwealth Ex. 1-B). CRS received the 619 Property by deed, which was recorded in July 2009. (631 LP Ex. D; Commonwealth Ex. 4-1).[2] In relation to its purchase of the 619 Property, CRS also purchased a title insurance policy from Commonwealth. Id.

631 LP eventually tried developing the 631 Property into residential apartments. (631 LP Ex. H; Commonwealth Ex. 1-B). On October 27, 2015, 631 LP filed an application for Zoning/Use Registration Permit with the Department of Licenses and Inspections. (631 LP Ex. D; Commonwealth Ex. 3-B). 631 LP requested a zoning variance to expand and convert the existing office building into residential apartments without having to include the number of parking spaces required under the zoning code. Id. 631 LP's development plans included demolishing the South Wall.

On February 17, 2016, CRS objected to 631 LP's application by submitting their own letter to the Department of Licenses and Inspections. (631 LP Ex. B; Commonwealth Ex. 3-D). In its letter, CRS objected to 631 LP's application on a number of grounds, one being that 631 LP's demolition of the South Wall would violate CRS' ownership interest in the South Wall. Id.

---

[2]   The deed described the property in part as "[t]o a point in a party wall; thence through said party wall in an easterly direction parallel with Mr. Vernon Street 130 feet to a point in the party wall, said point being on the westerly side line of Watts Street." (631 LP Ex. H; Commonwealth Ex. 1-B).

In reviewing the letter, it appears that CRS was inconsistent about the extent of its purported ownership interest in the South Wall. In a few instances, CRS' more general statements can be interpreted as claims of total ownership of the entire wall. See e.g., id. at 2 ("the wall is owned by [CRS]"); id. at 3 ("[CRS] Owns the Wall"). However, in other instances in the letter, CRS did limit its claimed ownership interest to the portion of the South Wall located within the bounds of its deed and as reflected in a survey of the 619 Property performed in 2011, both of which CRS directly referenced and attached to the letter. Id. at 3-5.

The Department of Licenses and Inspections ultimately denied 631 LP's plans to remove the South Wall. In response, 631 LP filed a lawsuit against CRS (the "Underlying Action"). (Commonwealth Ex. 3). Seeking declaratory relief and to quiet title, 631 LP claimed that it was the sole owner of the South Wall, and that it was therefore entitled to demolish the South Wall without CRS' consent. Id. ¶¶ 33-34, 38-48.

In direct response to 631 LP's claim that it owned the entire South Wall, CRS stated in its answer (the "Underlying Answer") that, in fact, CRS owned a portion of the South Wall. CRS attached as an exhibit to the Underlying Answer a copy of the 619 Property's deed and the 2011 survey showing "the portion of the South Wall owned by Defendant." Id. at ¶ 5. Indeed, CRS consistently defined "its portion of the South Wall" with

references to its recorded deed and survey. <u>Id.</u> at ¶¶ 12, 20, 26, 32. These attachments show exactly where the property line runs through the South Wall separating the 619 Property from the 631 Property. (Commonwealth Ex. 4-1).

Relevant to the dispute at hand, both 631 LP and CRS requested Commonwealth pay for their litigation expenses in the Underlying Action pursuant to each of their title insurance policies. (Commonwealth Ex.'s 1-C, 6). Commonwealth accepted CRS' claim for coverage because 631 LP claimed ownership in the entire wall, including the portion that encroached on the 619 Property. (631 LP Ex. I; Commonwealth Ex. 1-C). In its denial letter to 631 LP, Commonwealth stated that CRS' claims in the Underlying Answer did not implicate land covered under the Policy. Because CRS only claimed that it owned the portion of the wall located on the 619 Property, CRS' claims did not affect the covered land described in Schedule A of 631 LP's Policy. <u>Id.</u> Commonwealth also invoked the survey exception, stating that it had no obligation to provide coverage under the Policy because an accurate and complete survey would have disclosed the encroachment or boundary dispute relating to the South Wall. <u>Id.</u>

After it filed its Underlying Answer, CRS filed a motion for a preliminary injunction to enjoin 631 LP from demolishing the South Wall. (631 LP Ex. D; Commonwealth Ex. 4). On March 1, 2017, the Court of Common Pleas granted the motion, finding that the

South Wall was a party wall that stood on both sides of the property line. (631 LP Ex. H; Commonwealth Ex. 1-B). The Court of Common Pleas ultimately ruled in favor of CRS on 631 LP's claims and entered a permanent injunction prohibiting 631 LP from demolishing any part of the South Wall without CRS' consent. Id.

On March 15, 2017, 631 LP made an additional request for coverage, which Commonwealth again denied. (Commonwealth Ex. 1-E). Once again, Commonwealth explained that it had no obligation to provide coverage under the survey exception. Commonwealth also stated that "the definition of land insured by the Policy does not include any property beyond the lines of the area described or referred to in Schedule A; specifically any portion of the [619 Property]." (631 LP Ex. K; Commonwealth Ex. F).

631 LP commenced this lawsuit on May 31, 2017 alleging that Commonwealth had breached the Policy by failing to defend 631 LP in the Underlying Action, that Commonwealth's conduct in defending CRS estopped it from refusing to defend 631 LP, and that Commonwealth's breach constitutes a violation of the Pennsylvania Bad Faith Statute, 42 Pa. C.S. § 8371. Commonwealth moves for summary judgment in its favor on all three claims, while 631 LP cross-moves for summary judgment on its claim for breach of contract.

## II.  LEGAL STANDARD

When ruling upon a motion for summary judgment, the courts are generally guided by the language contained in Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

In reading this rule, it is clear that summary judgment is appropriately entered only when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. _Willis v. UPMC Children's Hospital of Pittsburgh_, 808 F.3d 638, 643 (3d Cir. 2015).  An issue of fact is material and genuine if it "affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party."  _Parkell v. Danberg_, 633 F.3d 313, 323 (3d. Cir. 2016) (quoting _Willis_, 808 F.3d at 643; _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. _Burton v. Telefax, Inc._, 707 F.3d 417, 425 (3d Cir. 2013). "If the non-moving party bears the burden of persuasion at trial,

'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (quoting <u>Wetzel v. Tucker</u>, 139 F.3d 380, 383, n.2 (3d Cir. 1998)).  In response, and "to prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.'" <u>Burton</u>,707 F.3d at 425 (quoting <u>Jakimas v. Hoffmann-La Roche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007)).  Accordingly, "[t]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" <u>Moody v. Atlantic City Board of Education</u>, 870 F.3d 206, 213 (3d Cir. 2017)(quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).

## III. DISCUSSION

Commonwealth asserts three arguments for summary judgment. First, Commonwealth argues it did not breach the Policy because it had no duty to defend, and that even if it had a duty, its performance was excused by the Policy's survey exception.  Second, Commonwealth argues that the doctrine of quasi-estoppel is inapplicable because its treatment of 631 LP and CRS was not inconsistent.  Third, Commonwealth argues that it could not have

violated Pennsylvania's bad faith statute because there has been no underlying breach.

631 LP cross-moves for summary judgment on its breach of contract claim, arguing that Commonwealth's duty to defend was not excluded by the survey exception.[3]

*A. Breach of Contract*

In Count I, 631 LP asserts a claim for breach of contract against Commonwealth for failing to cover its expenses in the Underlying Action. Commonwealth avers that it had no duty to defend CRS' claim under the Policy. Commonwealth further asserts that even if a duty did exist, 631 LP's claim fell squarely within the survey exception.

   1. <u>Duty to Defend</u>

Commonwealth asserts that it did not breach the Policy because CRS did not assert a claim that obligated Commonwealth to defend 631 LP. Specifically, Commonwealth argues that CRS only claimed an interest in land that was excluded from the Policy – i.e., land that did not fall within the description of the 631 Property in Schedule A. We agree.

The "interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by

---

[3]　　In addition to the grounds on which we deny 631 LP's Cross-Motion for Summary Judgment, which we discuss below, we also deny 631 LP's Cross-Motion because it was untimely. By Order of this Court, motions for summary judgment were due on February 12, 2018. (Doc. Nos. 7, 9). 631 LP did not move for summary judgment until it filed its brief responding to Commonwealth's motion on February 26, 2018.

the court." <u>Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.</u>, 562 F.3d 591, 595 (3d Cir. 2009) (quoting <u>Donegal Mut. Ins. Co. v. Baumhammers</u>, 938 A.2d 286, 290 (Pa. 2007)); <u>see also</u>, <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006). "A title insurance policy is subject to the same rules of construction that govern other insurance policies and must be liberally construed in favor of the insured party to maximize coverage while considering the language of the policy and the expectation of the insured so as to give reasonable meaning to its terms." <u>Lupu v. Loan City, LLC</u>, 244 F. Supp. 3d 455, 465 (E.D. Pa. 2017) (quoting <u>Rood v. Commonwealth Land Title Ins. Co.</u>, 936 A.2d 488, 491 (Pa. Super. Ct. 2007)).

"[T]he insurer has a duty to defend the insured if the complaint in the underlying case alleges facts that support recovery under the policy." <u>Lupu</u>, 244 F. Supp. 3d at 463-64. The insured's duty to defend arises when the "claim against the insured is potentially covered by the insurance policy." <u>Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.</u>, 2 A.3d 526, 533 (Pa. 2003). In other words, "[a]s long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend." <u>Id.</u> at 541.

We adhere to the four corners rule when considering an insurer's duty to defend under Pennsylvania law, "under which an insurer's potential to defend is determined solely by the

allegations" in the underlying action.  Ramara Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016).  "The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."  Am. & Foreign Ins., 2 A.3d at 541.  Importantly, we do "not look outside the allegations of the underlying complaint or consider extrinsic evidence."  Ramara Inc., 814 F.3d at 673.

Here, we find that no reasonable jury would be able to find that Commonwealth had a duty to defend 631 LP in the Underlying Action.  The record establishes beyond genuine dispute that, in the Underlying Action, CRS only claimed ownership to the portion of the South Wall on the 619 Property.

In the Underlying Answer, CRS specifically "denie[d] that the entire South Wall is part of the 631 Building and aver[ed] to the contrary that *a portion* of the South Wall is owned by [CRS]." (631 LP Ex. D; Commonwealth's Ex. 4, at 2-3 ¶ 8 (emphasis added)).  CRS asserted that "[631 LP] has no right to remove the portion of the South Wall owned by [CRS]," (id. at 3 ¶ 11), and that "[CRS] owned a portion of the South Wall from the time that it had its deed and obtained its survey."  Id. ¶ 26.  Furthermore, CRS maintained, "[t]hat it owns a portion of the South Wall and that Plaintiff [could not] proceed to demolish any portion of the South Wall without [CRS'] consent."  Id. ¶ 47.

CRS' claims were particularly unambiguous because they were made in direct reference to its deed and 2011 survey of the 619 Property.  CRS attached the survey and deed to the Underlying Answer, both of which clearly indicate the 619 Property line runs through the South Wall.  CRS' claims with regard to "its portion" of the South Wall were clearly in specific reference to the five inches of the South Wall found on the 619 Property.  Based on the record before us, we find that CRS' statements in the Underlying Action cannot reasonably be construed to be making a claim against land located on the 631 Property.

631 LP's most compelling argument appears in relation to CRS' letter to Philadelphia's Department of Licenses and Inspections. In reading that letter, it is certainly possible to construe CRS' statements as claims of ownership to a portion of the 631 Property – i.e., property covered in Schedule A of the Policy.

However, as noted above, when considering Commonwealth's duty to defend, we only look to what CRS asserted in the Underlying Action.  Am. & Foreign Ins., 2 A.3d at 541.  631 LP's inclusion of CRS' letter in its Underlying Complaint does not sway our analysis.  CRS' pre-litigation statements do not define CRS' stance in the actual litigation simply because 631 LP pleaded those statements in its Underlying Complaint and attached CRS' letter.  (Commonwealth Exs. 3, 3-D).  Nor are CRS' allegations in its Underlying Answer defined by its statements in the zoning letter simply because it

attached the letter to its Underlying Answer. (Commonwealth Exs. 4, 4-2). CRS defined its claims with regard to its portion of the South Wall by reference to its deed and survey, not by reference to its statements in the zoning letter. (Commonwealth Ex. 4 ¶¶ 5, 8, 9, 10, 12, 20 ("the portion of the South Wall owned by Defendant as noted in its Deed and Survey"), 24, 25, 32, 33, 36).

Because no reasonable juror could conclude CRS' statements in the Underlying Action constituted claims against the 631 Property, as covered under Schedule A of the Policy, we grant summary judgment to Commonwealth on 631 LP's breach of contract claim. Accordingly, we also deny 631 LP's Cross-Motion for Summary Judgment on the same ground.

2. <u>Survey Exception</u>

Commonwealth asserts that it did not breach the Policy even if it did have a duty to defend 631 LP because the survey exception applied to 631 LP's request for coverage. Again, we agree with Commonwealth and find that summary judgment is proper because no reasonable juror could find that, when 631 LP purchased the property in 2015, a complete and accurate survey would not have disclosed the fact that the South Wall encroached onto the 619 Property.

In essence, the Policy's survey exception provides that Commonwealth had no obligation to pay for 631 LP's costs, attorneys' fees, or expenses which arise by reason of "[e]asements,

14

encroachments, overlaps, shortages of area, boundary line disputes and other matters affecting title that an accurate and complete survey would disclose." (631 LP Ex. A; Commonwealth Ex. 1-A).

As the insurer, Commonwealth "bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996). "A title insurance company binds itself absolutely to indemnify the policyholder for any loss resulting from defect in title, no matter what the cost, unless the particular defect is exempt by the policy." Ely v. Munshower, 4 Pa. D. & C.3d 430, 435 (Pa. Com. Pl. 1977). Accordingly, "[i]t is well recognized that a title insurance company can except from coverage such discrepancies by the terms and conditions of its policy." Id. Pennsylvania courts have repeatedly stated that it "will uphold the plain meaning of explicit exclusions contained in an insurance policy, [because] a policyholder cannot reasonably expect unlimited coverage in the face of an explicit and unambiguous limitation." Riccio v. Am. Republic Ins. Co., 683 A.2d 1226, 1231 (1996), aff'd, 705 A.2d 422 (1997); Madison Constr. Co. v. Harleysville Mut. Ins. Co., 678 A.2d 802, 805 (Pa. Super. Ct. 1996) (en banc).

Furthermore, "[a]n exclusionary clause is enforceable and will effectively preclude coverage as long as the policy language is clear." Id. "Thus, if an exclusionary clause in an insurance

contract is unambiguous, conspicuously located, and does not result in the provision of a type of coverage wholly different than the type of coverage that the insured is seeking, then the exclusion is generally enforceable." First Liberty Ins. Corp v. Budow, No. CIV. 05-CV88, 2007 WL 2071883, at *11 (E.D. Pa. July 17, 2007), aff'd, No. 07-3418, 2009 WL 45464 (3d Cir. Jan. 8, 2009).

It is beyond reasonable dispute that the Policy's survey exception is unambiguous and enforceable. The survey exception contains plain language that excuses Commonwealth's duty to defend in disputes that arise from particular issues that an accurate survey would have disclosed. Furthermore, whether the Underlying Action is considered a dispute about an easement, encroachment, or boundary line, each are explicitly covered in the Policy's survey exception.

It is undisputed that 631 LP did not conduct a survey prior to purchasing the 631 Property. (Def.'s Br. in Supp. of Mot. for Summ. J. 7 ¶ 12). Accordingly, to grant Commonwealth's Motion for Summary Judgment on Count I, there must be competent proof establishing beyond a genuine dispute that an accurate survey would have disclosed the boundary line running through the South Wall.

We find that Commonwealth has met its burden in proving the application of the survey exception. Commonwealth advances sufficient record evidence to establish no reasonable juror could find that, had 631 LP obtained an accurate and complete survey in

2015, the survey would not have shown that the property line between the 619 and 631 Properties ran through the South Wall. To start, Commonwealth provides testimony directly on this point. (Commonwealth Ex. 9, at 44-45). Indeed, the record reflects that the minimum professional standards for a complete and accurate survey require that the survey show all buildings on the surveyed property, all walls within five feet of the boundary line, and all "potentially encroaching structural appurtenances and projections observed." (Commonwealth Ex. 11).

Moreover, CRS and 631 LP stipulated to the fact that a portion of the South Wall lies on CRS' side of the property line in the Underlying Action. (Commonwealth Ex. 7, ¶ 18). And as 631 LP acknowledged, "[t]here were no surveys or other documents produced or introduced in [the Underlying Action] by any party that showed anything other than the property line running through the south wall." (Commonwealth Ex. 8, at 110). Indeed, CRS' survey of the 619 Property in 2011 clearly identifies the 619 and 631 property line running through the South Wall. (Commonwealth Ex. 4-1). Importantly, 631 LP offers no competing evidence to suggest a complete and accurate survey of the 631 Property in 2015 would not have shown that the South Wall encroached onto the 619 Property. (631 LP's Mem. in Opp., at 12-14).

Accordingly, we find it beyond genuine dispute that a complete and accurate survey of the 631 Property in 2015 (had one been

obtained) would have revealed to 631 LP that the South Wall encroached onto the 619 Property. Because the Policy's survey exception excuses Commonwealth from defending 631 LP in a dispute arising from easements, encroachments, and boundary line disputes that an accurate survey would disclose, and because it is beyond genuine dispute that the Underlying Action falls squarely into this exception, we grant summary judgment in favor of Commonwealth on 631 LP's breach of contract claim. On that same basis, we also deny 631 LP's Cross-Motion for summary judgment.

    *B. Quasi-Estoppel*

In Count II, 631 LP asserts a claim for estoppel under the doctrine of quasi-estoppel. Commonwealth argues that quasi-estoppel is inapplicable because its treatment of 631 LP and CRS was not inconsistent. We agree with Commonwealth and grant summary judgment in favor of Commonwealth on 631 LP's claim for quasi-estoppel.

The doctrine of "quasi-estoppel operates to bar a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party." Sheehan v. Mellon Bank, N.A., No. CIV. A. 95-2969, 1996 WL 571779, at *6 (E.D. Pa. Oct. 3, 1996), aff'd sub nom., Sheehan v. Mellon Bank, 118 F.3d 1577 (3d Cir. 1997) (quoting Erie Telecommunications, Inc. v. Erie, 659 F. Supp. 580, 585 (W.D. Pa. 1987)); see also Hesling v. Avon Grove Sch. Dist., 428 F. Supp. 2d 262, 268 (E.D. Pa. 2006) ("Quasi-

estoppel. . . precludes a party from asserting to another's disadvantage, a position inconsistent with a position previously taken by said party.").

Quasi-estoppel is different from equitable estoppel because quasi-estoppel has no requirement that the plaintiff relied on the defendant's prior conduct. In re G-I Holdings, Inc., 580 B.R. 388, 417-18 (Bankr. D.N.J. 2018). However, knowledge of existing rights is essential to estoppel cases, so "[t]he requirements for proper application of quasi-estoppel are, then, that the person against whom it is sought to be applied has previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine." Erie Telecommunications Inc., 659 F. Supp at 586.

We find that summary judgment in favor of Commonwealth on 631 LP's estoppel claim is proper here. It is beyond genuine dispute that Commonwealth's decision to defend CRS in the Underlying Action does not constitute an inconsistent position with its decision to deny coverage to 631 LP.

As noted above, no reasonable juror could find that CRS claimed anything more than the land that was located on the 619 Property in the Underlying Action. Commonwealth refused to cover 631 LP because CRS' claims did not reach the 631 Property, which was the outer limit of 631 LP's coverage under Schedule A of its Policy. The record also clearly reflects that 631 LP's claim in

the Underlying Action was substantially different: not only did 631 LP claim the portion of the South Wall located on the 631 Property, it also claimed the portion of the South Wall located on the 619 Property. This triggered Commonwealth's duty to defend CRS, whereas CRS never made a claim that triggered Commonwealth's duty to defend 631 LP.

Given the fundamentally different claims at issue in the Underlying Action, it is beyond genuine dispute that Commonwealth's decision to defend CRS does not constitute an inconsistent decision with regard to its denial of coverage for 631 LP. We therefore grant summary judgment in favor of Commonwealth on 631 LP's quasi-estoppel claim.

C.    *Bad Faith*

In Count III, 631 LP asserts a claim for statutory bad faith under 42 Pa. Cons. Stat. Ann. § 8371 (1990).

Under the bad faith statute, the insured must show by clear and convincing evidence that the insurer: "(1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super Ct. 1994). Importantly, "where there [is] no duty to defend, there [is] good cause to refuse to

defend against suit." <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 751 n.9 (3d. Cir 1999).

Because we have already held that Commonwealth is entitled to summary judgment based on the finding that it did not have a duty to defend 631 LP in the Underlying Action, we must also find that Commonwealth had good cause to refuse 631 LP's request for coverage. Accordingly, we grant summary judgment in favor of Commonwealth on 631 LP's bad faith claim.

**IV.  CONCLUSION**

For the foregoing reasons, Commonwealth's Motion for Summary Judgment is granted and 631 LP's Cross-Motion is denied. An appropriate Order will follow.